UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAJUAN RICHARD WHITLOW,

        Petitioner,

v.

CARMEN D. PALMER,

        Respondent.

_____/

Case No. 1:17-cv-1010

Honorable Robert J. Jonker

**<u>OPINION</u>**

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.  Factual allegations

Petitioner Jajuan Richard Whitlow is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. On December 9, 2013, a Macomb County Circuit Court jury found Petitioner guilty of second-degree murder, MICH. COMP. LAWS § 750.317. On April 10, 2014, the court imposed a sentence of 13 to 40 years.

On November 15, 2017, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on November 15, 2017. (Pet., ECF No. 1, PageID.7.)

The petition raises two grounds for relief, as follows:

I.  THE STATE COURT DECISION[] WAS CONTRARY TO, OR INVOLVED AN OBJECT[IVE]LY UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, AND/OR AN OBJECT[IVE]LY UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF EVIDENCE PRESENTED IN THE TRIAL COURT, WHEN IT DENIED THAT APPELLANT'S CONVICTION VIOLATES DUE PROCESS OF LAW AND MUST BE VACATED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO OVERCOME HIS PROOF OF INSANITY AND THE VERDICT IS AGAINST THE GREAT WEIGHT OF THE EVIDENCE.

II. THE STATE COURT DECISION [] WAS CONTRARY TO, OR INVO[L]VED AN OBJECT[IVE]LY UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, AND/OR AN OBJECT[IVE]LY UNREASONABLE DETERMINATION OF THE FACT IN LIGHT OF EVIDENCE PRESENTED IN THE TRIAL COURT, WHEN IT DENIED THAT THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY EMPANELING A JURY REFERRED TO ONLY BY JUROR NUMBERS AND BY FAILING TO GIVE A PROPER CAUTIONARY INSTRUCTION.

(Br. in Supp. of Pet., ECF No. 2, PageID.10.)

The state-court conviction arose from Petitioner's assault of a fellow resident, Albert Potter, at the Behavioral Center of Michigan, which occurred a few hours after Petitioner was admitted for treatment of his mental disorders following a psychotic episode. According to the facts admitted in Petitioner's brief on appeal to the Michigan Court of Appeals (Def.-Appellant's Br. on Appeal, ECF No. 2-1, PageID.34), which Petitioner adopts for purposes of habeas review, Petitioner apparently attempted to suffocate Potter, Petitioner's 80-year-old, physically ill roommate, after which Petitioner beat Potter in the face approximately 10 or 15 times. When the nurse responded to Potter's screams and tried to stop Petitioner, Petitioner charged at the nurse, who ran. Petitioner then turned out the light and began punching Potter in the face again. After Petitioner had been removed from the room, he asked about Potter's HIV status and yelled, "He f**king attacked me. You all f**king know it." (*Id.*, PageID.34.) When Petitioner learned that the police wanted to search his person for bodily fluids and trace evidence, he repeatedly spit on his hands and chewed his fingernails, attempting to clean them with his teeth. (*Id.*, PageID.35-36.) Potter was hospitalized and placed on a ventilator. He died a few days later of blunt force trauma to the head. (*Id.*)

Petitioner presented the testimony of Ellen Garver, a forensic psychologist from the Center for Forensic Psychiatry. Garver initially found Petitioner incompetent to stand trial. Three months later, she concluded that he was competent to be tried. She also evaluated him for his criminal responsibility, concluding that he met the statutory criteria for a substantial disorder of thought that caused him to lack the capacity to appreciate the nature and quality or wrongfulness of his actions or to conform his actions to the law. Garver diagnosed Petitioner with schizoaffective disorder with a combination of thought and mood disorder, or paranoid

schizophrenia. She concluded that, based on her evaluation, Petitioner was not guilty by reason of insanity. (*Id.*, PageID.37.)

The prosecutor presented no contrary expert testimony. Instead, as the Michigan Court of Appeals discussed in its decision on appeal, the prosecutor argued that Petitioner's behavior demonstrated that he was aware of what he was doing at the time of the attack: Petitioner chose a vulnerable victim only after knowing that the only male guard had left the floor; when confronted, Petitioner rushed at the nurse to get her to leave the room, turned out the light, and began beating the victim again; Petitioner immediately deflected responsibility, suggesting that the victim had initiated the attack; Petitioner went to the bathroom immediately after the attack to wash his hands; he asked if the victim was HIV positive; he immediately complied with the police when they arrived, though he had refused to comply with staff; and, when told that he would be swabbed and his nails clipped for DNA, Petitioner immediately tried to bite his nails off and then tried to keep his fingers away from the officers. (Mich. Ct. App. Op., ECF No. 2-1, PageID.52-53.) Petitioner does not contest the court of appeals' factual summary.

After four days of trial, the jury found Petitioner to be guilty but mentally ill on the offense of second-degree murder. The court sentenced him to 13 to 30 years' imprisonment. The trial court subsequently denied his motion for a new trial. Petitioner appealed his conviction, raising the same two issues presented in the instant habeas petition. In an unpublished opinion issued on March 24, 2016, the Michigan Court of Appeals rejected both appellate arguments and affirmed the conviction. The Michigan Supreme Court denied leave to appeal on September 27, 2016.

II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Ground I: Sufficiency of the Evidence

In his first ground for habeas relief, Petitioner contends that the trial court denied him due process when it declined to grant his motion for relief from judgment, on the grounds that the prosecutor had failed to provide evidence to overcome Petitioner's proof of insanity. Petitioner also contends that the verdict was against the great weight of the evidence.

A § 2254 challenge to the sufficiency of the evidence is governed by the standards set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988). The *Jackson* decision instructs that constitutional review for the sufficiency of evidence must be made "with explicit reference to the substantive elements of the criminal offense as defined by state law." 443 U.S. at 324 n.16. *See also In re Winship*, 397 U.S. 358, 364 (1970) (due process is satisfied if the prosecution proves every element of a charged offense beyond a reasonable doubt). The Sixth Circuit has held that challenges to evidence on non-elements do not generally implicate the due process concerns addressed by *Jackson* and *Winship*. *See Gall v. Parker*, 231 F.3d 265, 286-87, 307-08 (6th Cir. 2000) (addressing Kentucky law of insanity), *overruled on other grounds by Bowling v. Parker*, 344 F.3d 487, 501 n.3 (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999) (holding that Jackson "does not implicate affirmative defenses, because proof of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime"); *Allen*, 858 F.2d at 1200.

Under Michigan law, sanity is not an element of substantive criminal charges, but insanity is an affirmative defense. *See* Mich. Comp. Laws § 768.21a. In *Duffy v. Foltz,* 804 F.2d 50 (6th Cir. 1986), relying on the Michigan Supreme Court's answer to a certified question in *In re Duffy*, 390 N.W.2d 620, 621 (Mich. 1986), the Sixth Circuit held that sanity is not an element of the substantive offenses of rape and kidnaping under Michigan law. *Duffy*, 804 F.2d at 54. Subsequently, in *Allen*, 858 F.2d at 1197, the Sixth Circuit reaffirmed the principal that insanity is an affirmative defense to Michigan criminal charges and found that proof of sanity is not an

7

element of the offenses of assault with intent to rob and assault with intent to murder. Since *Allen* and *Duffy*, the courts continue to conclude that the structure of Michigan law makes insanity an affirmative defense. *See, e.g., Johnigan v. Elo*, 207 F. Supp. 2d 599, 611 (E.D. Mich. 2002). As a result, under Michigan law, a claim that the prosecution failed to meet its burden to prove sanity is not cognizable in a habeas proceeding because it fails to raise a federal constitutional issue. *Duffy*, 804 F.2d at 54; *Gall*, 231 F.3d at 304.

Moreover, the assertion that the verdict was against the great weight of the evidence does not state grounds for habeas corpus relief. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial. *See People v. Lemmon*, 576 N.W.2d 129, 137 (Mich. 1998). This question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude." *Id.* at 133 n.8. As a consequence, a "weight of the evidence claim" is purely a matter of state law and is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a state's criminal judgment susceptible to a collateral attack in the federal courts."); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ( "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *accord Chatman v. Warden Ross Corr. Inst.*, No. 2:10–cv–1091, 2013 WL 1663919, at *10 (S.D. Ohio Mar. 26, 2013); *Underwood v. Berghuis*, No. 1:08–cv–642, 2011 WL 693 8471, at *15 (W.D. Mich. Aug. 8, 2011) ("Since a 'weight of the evidence claim' is purely a matter of state law, it is not cognizable on habeas review."). Because this Court lacks authority to review a state court's application of its own law,

the state-court determination that the verdict was not against the great weight of the evidence is final.

Petitioner's first ground for relief therefore is not cognizable on habeas review.

IV.     Ground II:  Anonymous Jury

In his second ground for habeas relief, Petitioner argues that the trial court denied him due process when it empaneled a jury referred to only by juror numbers and failing to give a cautionary instruction.  Petitioner contends that, as a result, he was tried by an anonymous jury, in violation of his right to a fair trial.

The Michigan Court of Appeals rejected the claim both because it had not been subject to a timely objection and because it did not constitute constitutional error:

> To preserve a claim that the trial court wrongfully referred to prospective jurors by numbers rather than by their names, a defendant must "object to the trial court's referring to the jurors by numbers . . . ." *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007).  Here, defendant did not object to the trial court's practice of referring to prospective jurors by their badge numbers.  Therefore, this issue is unpreserved for appellate review.
>
> Unpreserved issues, both constitutional and nonconstitutional, are reviewed for plain error.  *Id.*  Plain error analysis requires three findings: 1) error, 2) that is plain, 3) which affects substantial rights.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  A plain error will generally affect substantial rights when there is a showing of prejudice—"that the error affected the outcome of the lower court proceedings."  *Id.*  Once the three findings for plain error are met, "reversal is warranted only when the plain . . . error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."  *Id.* at 763-764 (citation and quotation marks omitted).
>
> A trial court's practice of referring to prospective jurors by numbers instead of their names potentially implicates the use of an "anonymous jury."  *Hanks*, 276 Mich App at 93.  The use of an "anonymous jury" implicates two significant interests:  "(1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence."  *Id.* (citation and quotation marks omitted).  This Court has defined an "anonymous jury" as "one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment

by the public." *Id.* (citation and quotation marks omitted). However, the precise technical definition of "anonymous jury" is evasive, and this Court has defined it by describing what it is not.

> An "anonymous jury" is "something more than just the jurors' names [being] withheld from the parties," and furthermore, additional "biographical information about potential jurors" must be withheld from the parties. *Id.* (citation and quotation marks omitted). Ultimately, "[a] challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or that the defendant's presumption of innocence was compromised." *Id.* An anonymous jury was not impaneled in defendant's case. Although the trial court referred to potential jurors by badge numbers, other biographical information was clearly not withheld from the parties. The prospective jurors were thoroughly asked about their occupations, marital statuses, family information, and educational backgrounds. Voir dire elicited detailed information from the prospective jurors spanning hundreds of pages of trial transcript. Therefore, only in a literal sense was the jury "anonymous." Furthermore, defendant's presumption of innocence was not compromised. See *id.* Additionally, the trial judge explicitly told the potential jurors the following:
>
>> Please know that it's my rule in every single case and it has been for going on 12 years that I always refer to jurors by their juror number or their seat number. Only because, (a), I'll probably mispronounce your name and I don't . . . want to do that, and the jurors generally tend to feel more comfortable with that, so I've asked the attorneys to do that also so don't think they they're rude or inconsiderate because they call you by a number.
>
> The trial judge clearly informed the potential jurors that the number reference practice was largely only a logistical tool that it applied in all cases, and that it bore absolutely no weight on defendant's presumption of innocence. Defendant's contention that the trial court failed to give any sort of cautionary instruction is inaccurate. Accordingly, an "anonymous jury" was not impaneled, and defendant's due process rights were not violated.

(Mich. Ct. App. Op., ECF No. 2-1, PageID.54-55.)

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state

court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner has procedurally defaulted his federal claim in state court, he must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

The Michigan Court of Appeals expressly relied on Michigan's contemporaneous objection rule in denying Petitioner's claim. It is clear that the contemporaneous objection rule was well-established at the time of Petitioner's trial. *See, e.g.*, *People v. Kelly*, 378 N.W.2d 365, 369-70 (Mich. 1985). A rule designed to arm trial judges with the information needed to rule reliably "serves a governmental interest of undoubted legitimacy." *Lee v. Kemna*, 534 U.S. 362, 385 (2002). Petitioner's failure to comply with the state's independent and adequate state

procedural rule, *i.e.*, making a contemporaneous objection, caused him to default his claims in state court. *See Wainwright v. Sykes*, 433 U.S. 72, 86-88 (1977); *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011); *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010); *Lancaster*, 324 F.3d at 437; *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996). Further, although the state court reviewed the issue under a plain error standard, Petitioner's failure to object is still considered a procedural default. *See Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989); *see also Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) (citing *Harris*, 489 U.S. at 264 n.10). Accordingly, review by this court is barred unless Petitioner can show both cause and prejudice or manifest injustice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

Petitioner recites no cause excusing his default. Even assuming that he intends to claim that trial counsel was ineffective in failing to object, he cannot demonstrate such cause. While ineffective assistance of counsel may serve as cause to excuse a procedural default, a claim of ineffective assistance of counsel must be properly exhausted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Buell*, 274 F.3d at 349; *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001). Petitioner has never attempted to raise a claim of ineffective assistance of counsel at any level of the state courts. He therefore cannot overcome his default on that basis.

Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). In addition, Petitioner makes no attempt to show that he is actually innocent within the meaning of *Schlup*, 513 U.S. at 327. His claim, therefore, is procedurally defaulted.

Even if Petitioner's claim were not defaulted, he would not be entitled to relief. Although the Sixth Circuit has held that the empaneling of an anonymous jury should be limited to circumstances in which the jury needs reasonable protections, and then only after taking care to

minimize any prejudicial effect on the defendant, *United States v. Talley*, 164 F.3d 989, 1001 (6th Cir. 1999) (citing cases), neither due process nor the Sixth Amendment require that a juror's identity be disclosed. *See United States v. Lawson*, 535 F.3d 434, 440-41 (6th Cir. 2008) (rejecting the notion that the Constitution requires either a public trial or a right to juror identification). The Supreme Court has never held that jurors must be referred to by their names, rather than by their juror numbers. *See Cook v. Haas*, No. 5:13-cv-12171, 2014 WL 256286, at *3 (E.D. Mich. Jan. 23, 2014) (citing *Lawson*, 535 F.3d at 440). As a consequence, Petitioner cannot show that the state court's denial of his claim was either contrary to or an unreasonable application of clearly established Supreme Court precedent. *Wright v. Van Patten*, 552, U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented . . . , it cannot be said that the state court unreasonably applied clearly established Federal law.") (internal quotations and citations omitted).

In summary, Petitioner's second ground for habeas relief is both procedurally defaulted and without merit. He therefore is not entitled to habeas relief.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of

Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   January 23, 2018            /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE